**Nos. 25-1677, 25-2637**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Northern District of California

_____

### REPLY BRIEF FOR APPELLANTS

_____

BRETT A. SHUMATE
  *Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
CASEN B. ROSS
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT.............................................1

ARGUMENT ................................................................................................3

I.    THE DISTRICT COURT LACKS JURISDICTION ...........................................3

      A.    The Organizational Plaintiffs Lack Article III Standing To Seek
            The Reinstatement Of Terminated Government Employees ...................3

      B.    The District Court Lacked Subject-Matter Jurisdiction To Enter
            Either Injunction.............................................................................10

II.   PLAINTIFFS' ADDITIONAL ARGUMENTS PROVIDE NO SUPPORT FOR THE
      COURT'S REINSTATEMENT INJUNCTION ................................................ 18

III.  THESE APPEALS ARE NOT MOOT AND PLAINTIFFS PROVIDE NO SOUND
      REASON FOR THE COURT TO DECLINE TO EXERCISE ITS JURISDICTION
      TO REVIEW THE PRELIMINARY INJUNCTIONS ........................................ 20

CONCLUSION ........................................................................................... 24

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*AFGE v. Secretary of the Air Force,*
716 F.3d 633 (D.C. Cir. 2013) ....................................................... 11

*AFGE v. Trump*
139 F.4th 1020 (9th Cir. 2025) ................................................ 16, 17

*Block v. Community Nutrition Inst.,*
467 U.S. 340 (1984) ...................................................................... 15

*Blue v. Widnall,*
162 F.3d 541 (9th Cir. 1998) ....................................................... 14

*Bogaert v. Land,*
543 F.3d 862 (6th Cir. 2008) ....................................................... 21

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ................................................................ 2, 3, 5

*Deutsche Bank Nat'l Tr. Co. v. FDIC,*
744 F.3d 1124 (9th Cir. 2014) ..................................................... 22

*East Bay Sanctuary Covenant v. Biden,*
993 F.3d 640 (9th Cir. 2021) ....................................................... 16

*Elgin v. Department of the Treasury,*
567 U.S. 1 (2012) ........................................................... 10, 13, 17

*FDA v. Alliance for Hippocratic Med.,*
602 U.S. 367 (2024) ....................................................................... 5

*Flagstaff Med. Ctr., Inc. v. Sullivan,*
962 F.2d 879 (9th Cir. 1992) .......................................................22

*Graham v. Ashcroft,*
358 F.3d 931 (D.C. Cir. 2004) ..................................................... 11

*Hollingsworth v. Perry,*
558 U.S. 183 (2010) ...................................................................... 20

*Hunt v. Imperial Merch. Servs., Inc.,*
560 F.3d 1137 (9th Cir. 2009) ..................................................... 22

*Jennings v. Stephens,*
    574 U.S. 271 (2015) ........................................................ 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ...................................................21-22

*Meland v. Weber,*
    2 F.4th 838 (9th Cir. 2021) ...................................... 21, 22

*Michigan v. U.S. Army Corps of Eng'rs,*
    667 F.3d 765 (7th Cir. 2011) ........................................ 8

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ...................................................... 6

*National Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown,*
    567 F.3d 521 (9th Cir. 2009) ........................................ 9

*Northwest Env't Def. Ctr. v. Bonneville Power Admin.,*
    477 F.3d 668 (9th Cir. 2007) ...................................... 19

*OPM v. AFGE,*
    No. 24A904 (U.S. Apr. 8, 2025) ......................... 1, 2, 3, 4, 9

*Simon v. Eastern Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) ...................................................... 6

*Southern Utah Wilderness All. v. Smith,*
    110 F.3d 724 (10th Cir. 1997) .................................... 22

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) .................................................... 7

*Trump v. AFGE,*
    No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) ................. 16

*Trump v. CASA, Inc.,*
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ............. 8, 9

*Turpen v. City of Corvallis,*
    26 F.3d 978 (9th Cir. 1994) ........................................ 8

*United States v. Fausto,*
    484 U.S. 439 (1988) ............................................ 11, 15

*Veit v. Heckler*,
    746 F.2d 508 (9th Cir. 1984) ......................................................... 14

*Williams Sports Rentals, Inc., In re*,
    90 F.4th 1032 (9th Cir. 2024) ........................................................ 8

**Statutes:**

Civil Service Reform Act of 1978:
    5 U.S.C. § 7116(a)(7) ................................................................. 12
    5 U.S.C. § 7117(a)(1) ................................................................. 12
    5 U.S.C. § 7118 ........................................................................ 10
    5 U.S.C. § 7121(a)-(b) .............................................................. 10
    5 U.S.C. § 7122(a) ................................................................... 10
    5 U.S.C. § 7123(a) ................................................................... 10
    5 U.S.C. § 7513(d) ................................................................... 10
    5 U.S.C. § 7703 ...................................................................... 10

28 U.S.C. § 1292(a)(1) ................................................................. 21

**Rules:**

Fed. R. Civ. P. 62(c)(1) ............................................................... 23

9th Cir. R. 3-3 ........................................................................ 23

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs—a group of nonprofit organizations and federal-sector unions—challenge federal agencies' decisions to terminate probationary employees. The district court entered a sweeping preliminary injunction at the behest of the organizational plaintiffs, requiring six federal agencies to immediately return to duty thousands of probationary employees—an injunction the Supreme Court stayed pending the resolution of this appeal because the nonprofits' allegations are "insufficient" to support their standing. *OPM v. AFGE*, No. 24A904 (U.S. Apr. 8, 2025) (S. Ct. Stay Order). Thereafter, the district court granted a second preliminary injunction at the behest of the union plaintiffs, requiring the federal government to provide certain notices to terminated probationary employees.

Plaintiffs barely defend the district court's reinstatement injunction in this Court. Instead, plaintiffs primarily urge that this Court may ignore that injunction because it has been stayed by the Supreme Court "for more than two months" and because the district court has now itself recognized that reinstatement is not appropriate as an ongoing remedy. Resp. Br. 4, 35. Those arguments only underscore that this Court should vacate the reinstatement injunction—not dismiss the government's appeal, as plaintiffs propose.

The arguments that plaintiffs do advance in support of the court's reinstatement injunction are without merit. The organizational plaintiffs speculate that agencies' terminations of probationary employees will cause downstream harms

to the organizations and their members from a disruption of government services. But Article III requires plaintiffs to identify concrete injuries traceable to specific wrongful actions, which they have not done.  *See* S. Ct. Stay Order (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).  Plaintiffs' arguments that the *union* plaintiffs have standing is no answer:  the district court granted reinstatement solely to redress the alleged injuries of the nonprofit organizations, which do not suffice.  Plaintiffs' remaining arguments in support of the court's reinstatement injunction, to the extent that they make them, similarly fail to rebut the government's showing that the district court lacked subject-matter jurisdiction and that the reinstatement injunction was baseless where the government had already made clear that individual federal agencies—not the Office of Personnel Management (OPM)—have ultimate decision-making authority over the personnel actions at issue here.

Plaintiffs' response similarly does not rehabilitate the district court's second injunction, issued at the behest of the union plaintiffs, requiring the government to provide written statements to certain employees reflecting the district court's conclusion as to the circumstances of their termination.  As with the reinstatement injunction, the district court lacked subject-matter jurisdiction to enter that relief. Congress has prescribed an exclusive review scheme for federal employees or unions to challenge terminations, and the union plaintiffs have a means to challenge the terminations at issue before the Federal Labor Relations Authority (FLRA).  Contrary to plaintiffs' assertions, the government's appeal of that injunction is not moot:

2

vacating the court's injunction, and making clear that the court lacked subject-matter jurisdiction to require agencies to provide those statements, would leave agencies free to clarify to those employees, if agencies wish to do so, that the agencies disagree with the statement they were previously required to issue under the court's order.

This Court should reverse and vacate the two injunctions.

## ARGUMENT

## I.   THE DISTRICT COURT LACKS JURISDICTION

### A.   The Organizational Plaintiffs Lack Article III Standing To Seek The Reinstatement Of Terminated Government Employees

**1.** The district court ordered the reinstatement of thousands of probationary employees at the behest of the organizational plaintiffs, concluding the organizational plaintiffs had standing to seek that relief because they alleged that the government's termination of probationary employees would degrade certain specific government services. The Supreme Court stayed that injunction, emphasizing that "under established law," the "allegations of the nine non-profit-organization plaintiffs … are presently insufficient to support the organizations' standing." S. Ct. Stay Order (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)). And the government's opening brief thoroughly established why that conclusion is correct. Opening Br. 17–24.

Plaintiffs' response brief largely sidesteps this fundamental flaw, devoting less than four pages to explaining why the organizational plaintiffs have standing. Plaintiffs attempt (Resp. Br. 51–56) to minimize the importance of the Supreme

3

Court's order staying the first injunction, suggesting that the Supreme Court did not adequately assess the "full record" or that the government "ignores" plaintiffs' evidence of purported harms. But at the Supreme Court, plaintiffs argued at length that they had identified harms that rise above mere speculation. *See* Respondents' Response to the Application for a Stay of Injunction at 18–20, *U.S. OPM v. AFGE*, No. 24A904, 2025 WL 1011693, at *18–20 (U.S. Apr. 3, 2025) (extensively listing supposed harms to the organizational plaintiffs). The Supreme Court rejected those arguments, finding that the organizational plaintiffs failed to establish any injury for Article III standing. S. Ct. Stay Order. Plaintiffs offer no reason to suggest why this Court's "independent analysis of the issue[]" should produce a different result. Resp. Br. 52.

Plaintiffs ignore, moreover, that in subsequent proceedings in district court, the district court itself rejected a substantially similar theory of standing advanced by the State of Washington. Washington attempted to assert a theory of standing based on a "purported loss of federal services" allegedly caused by the termination of probationary employees. 1-ER-21. The district court rejected that theory following the Supreme Court's stay order, concluding that "[t]he assertion that the termination of [probationary employees] at [federal] agencies will necessarily result in the diminishment of … specific services … rests on a speculative chain of contingencies," but any injury "'must be *certainly impending* to constitute injury in fact'" and allegations of "'*possible* future injury'" are not sufficient to establish an Article III injury. 1-ER-21

4

(quoting *Clapper*, 568 U.S. at 409); *see* Opening Br. 18–20.  The district court's conclusion that Washington's substantially similar allegations do not state a viable theory of standing confirms that the court erred by previously holding that the organizational plaintiffs had established standing.

Nor can the organizational plaintiffs' attempt (Resp. Br. 56 & n.16) to establish an injury based on an alleged inhibited "ability to perform their own work" and alleged disruptions to their "core activities and purposes."  As the government's opening brief established, those allegations rely on a diversion-of-resources theory that the Supreme Court rejected in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024).  The Court plainly held that organizations like the organizational plaintiffs here cannot "spend [their] way into standing."  *Id.* at 394; *see* Opening Br. 20–22.

The organizational plaintiffs also largely sidestep (Resp. Br. 55–57) significant causation and redressability problems—they cannot demonstrate that their injuries were caused by the terminations of probationary employees and that their injuries are redressable.  As explained, the organizational plaintiffs' alleged injuries rest on a highly speculative, attenuated chain of causal inferences that the Supreme Court and the district court have since rejected as insufficient to establish an injury.  But plaintiffs additionally speculate that reinstating probationary employees might result in those employees resuming the same tasks the same way and might then improve federal services that some of the organizational plaintiffs' members might use.  Even if isolated instances of diminished federal services qualified as injuries, the problems, if

5

any, would be with respect to particular probationary employees involved in particular tasks. That cannot justify broadly reinstating thousands of employees across six agencies—a remedy that far exceeded the district court's equitable authorities, in any event. *See infra* pp. 18–19.

Further, plaintiffs seem to acknowledge (Resp. Br. 36, 62) that individual agencies could lawfully terminate probationary employees; plaintiffs simply contest that OPM had authority to direct those terminations. But that acknowledgement further illustrates plaintiffs' failure to prove redressability because the judgment plaintiffs seek would leave federal agencies free to terminate the same employees, resulting in all the same supposed downstream injuries based on harms to federal services. *See Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (recognizing a redressability problem where the defendants would "remain free" to implement policies that inflicted injuries on the plaintiffs, even if the plaintiffs prevail); *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976). The record here underscores the redressability problem: after OPM clarified its guidance pursuant to the temporary restraining order, several agencies reiterated their termination decisions. *See* 2-ER-251–52, 258, 260.

Compounding the redressability problems with plaintiffs' injuries, even if the agencies choose to retain the terminated employees, that "does not mean that they will return to the same positions and assignments, or that the agencies will provide the services that the organizational plaintiffs desire. It is just as likely that the various

agencies will reassign these employees to new positions, or assign them different tasks, or prioritize their mission and services in a manner that does not result in increased services to the organizational plaintiffs." 9th Cir. Dkt. 27-1, at 6 (Mar. 26, 2025) (Bade, J., dissenting). Plaintiffs dismiss (Resp. Br. 57) that concern as a "speculative possibility," but it is their own theory of standing that relies on conjecture about whether the loss of probationary employees would impede various government programs and services that plaintiffs use.

**2.** Rather than meaningfully grapple with these flaws, plaintiffs attempt (Resp. Br. 50–51) to defend the district court's first preliminary injunction based on the union plaintiffs' standing. But the court granted the reinstatement injunction solely based on the allegations and purported injuries of the organizational plaintiffs. Whether a different plaintiff would have standing is irrelevant.

The district court entered the first injunction based on its assessment that only the organizational plaintiffs satisfied the various factors for injunctive relief as to six federal agencies—the court never assessed whether the union plaintiffs satisfied those factors to obtain that relief. As plaintiffs concede (Resp. Br. 50), when the district court granted that injunction, it was proceeding under the (correct) view that it did not have subject-matter jurisdiction over the union plaintiffs' claims. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) ("[A] plaintiff must demonstrate standing separately for each form of relief sought." (quotation marks omitted)). This Court has recognized, moreover, that a preliminary injunction is a party-specific remedy, and it is

7

error for a district court to grant relief to parties that did not demonstrate that they satisfied the prerequisite factors for that relief. *See, e.g.*, *In re Williams Sports Rentals, Inc.*, 90 F.4th 1032, 1042 (9th Cir. 2024) (vacating a "non-party-specific injunction" and remanding "with instructions to narrow the injunction to proceedings" against one plaintiff); *see also Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 789 (7th Cir. 2011) (explaining that the court balances "party-specific equities" in deciding whether to grant injunctive relief). Plaintiffs make no effort to establish the union plaintiffs' entitlement to the reinstatement relief provided by the first preliminary injunction; they never argue that the union plaintiffs satisfy the factors for a preliminary injunction. *See* Resp. Br. 50–51, 61–63. And because plaintiffs did not file a cross-appeal, they cannot seek to expand the scope of the initial injunction to a new set of plaintiffs. *See, e.g.*, *Jennings v. Stephens*, 574 U.S. 271, 276 (2015) ("[A]n appellee who does not cross-appeal may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." (quotation marks omitted)); *Turpen v. City of Corvallis*, 26 F.3d 978, 980 (9th Cir. 1994) (per curiam) (declining to modify or expand a district court's judgment absent a cross-appeal).

The Supreme Court has also recently emphasized that the scope of equitable remedies—including preliminary injunctions—are "typically party specific" and governed by "party-specific principles." *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *6, *7 & n.6 (U.S. June 27, 2025). *CASA* also makes clear that plaintiffs err by relying on the notion that "in an injunctive case this court need not address

8

standing of each plaintiff if it concludes that one plaintiff has standing." Resp. Br. 50 (quoting *National Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009)). Rather, the Supreme Court held that a preliminary injunction should be no "broader than necessary to provide complete relief to each plaintiff *with standing to sue*," further indicating that injunctive relief must be tailored to each individual plaintiff. *CASA*, 2025 WL 1773631, at *15 (emphasis added).

Here, the district court granted relief in the first preliminary injunction to require a specific subset of six federal agencies to reinstate terminated probationary employees "based only on the claims of the organizational plaintiffs," having determined that the organizational plaintiffs satisfied the factors for preliminary relief as to those agencies—the court expressly noted that "the question of relief for … the union plaintiffs … would be considered following additional briefing." 1-ER-10. The Supreme Court similarly recognized as much when it stayed the first injunction, noting that the Court's order did "not address the claims of the other plaintiffs, which did not form the basis of the District Court's preliminary injunction." S. Ct. Stay Order. Indeed, only after considering the union plaintiffs' claims did the district court grant a preliminary injunction to redress those plaintiffs' injuries, but that injunction did not provide any reinstatement remedy. *See* 1-ER-11, 26–27 (granting a preliminary injunction to the union plaintiffs that ran against 16 federal agencies).

### B. The District Court Lacked Subject-Matter Jurisdiction To Enter Either Injunction

The government explained in its opening and supplemental briefs that the district court lacked subject-matter jurisdiction to review plaintiffs' claims and enter either of its injunctions superintending the federal government's employment relationship. Congress established in the Civil Service Reform Act of 1978 (CSRA) "a comprehensive system for reviewing personnel action[s] taken against federal employees" that provides the "exclusive means" for review of the Executive's personnel actions. *Elgin v. Department of the Treasury*, 567 U.S. 1, 5, 8 (2012) (quotation marks omitted); *see* Opening Br. 24–29; Suppl. Br. 12–22. In particular, Congress permitted certain federal employees who are affected by agency personnel actions to challenge those actions before the Merit Systems Protection Board (MSPB), followed by judicial review in the Federal Circuit. 5 U.S.C. §§ 7513(d), 7703. Unions representing federal employees can challenge agency actions affecting the conditions of employment through the grievance and arbitration procedures provided by a relevant collective-bargaining agreement or before the FLRA, followed by judicial review in a court of appeals. *Id.* § 7118 (permitting a union to file an unfair-labor-practice charge); *id.* § 7121(a)–(b) (providing for grievance and arbitration procedures); *id.* § 7122(a) (providing for FLRA review of arbitration awards); *id.* § 7123(a) (providing for judicial review of FLRA orders). Plaintiffs improperly attempt to avoid

these statutory review mechanisms, and the district court erred by exercising jurisdiction over their claims.

**1.a.**  Plaintiffs contend (Resp. Br. 40–41) that the CSRA does not preclude the district court's jurisdiction because, according to plaintiffs, their claims cannot be reviewed through the process set out in that statute.  As an initial matter, the district court would lack jurisdiction even if plaintiffs' claims could not be raised before the MSPB or FLRA.  "[I]t is the comprehensiveness of the statutory scheme involved, not the adequacy of specific remedies thereunder, that counsels judicial abstention." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) (quotation marks omitted).  The Supreme Court thus held in *United States v. Fausto* that nonpreference members of the excepted service could not obtain review of personnel actions in Claims Court under the Back Pay Act even though they are excluded from the CSRA's provisions permitting appeal to the MSPB.  484 U.S. 439, 447–55 (1988). The Supreme Court likewise explained that the structure of the CSRA demonstrates Congress's intent to prohibit probationary employees from challenging personnel actions in district court, even though the CSRA grants such employees only limited rights to appeal personnel actions to the MSPB.  *Id.* at 450.  The CSRA can thus "preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and has not 'identified some other kind of plaintiff or some other kind of procedure for bringing the claim.'"  *AFGE v. Secretary of the Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013).  The exclusion of probationary employees

and nonprofit organizations such as plaintiffs from the statutory review procedures reflects Congress's considered judgment about the limitations of who should be permitted to challenge a personnel decision, rather than providing those parties a greater privilege to file suit directly in district court than that afforded to more tenured employees.  Nor can unions representing the interests of probationary employees challenge personnel actions in district court, thus asserting a right to judicial review that the employees themselves do not have.

In any event, plaintiffs are wrong that there is no way for them to obtain judicial review of their claims.  As the government explained in its supplemental brief, the Federal Service Labor–Management Relations Statute (FSLMRS)—a component of the CSRA—provides the union plaintiffs a mechanism to raise their claims before the FLRA, followed by judicial review.  Suppl. Br. 15–16.  In particular, the unions can file unfair-labor-practice charges before the FLRA or raise an unfair-labor-practice claim using the grievance and arbitration procedures set out in the applicable collective-bargaining agreements.

Plaintiffs err in contending (Resp. Br. 41) that the FLRA cannot hear challenges to government-wide rules or regulations.  Although the FSLMRS does not require agencies to bargain over issues governed by a government-wide rule or regulation, 5 U.S.C. § 7117(a)(1), the provisions of an existing collective-bargaining agreement prevail over any new rule or regulation, *id.* § 7116(a)(7).  Thus, even if OPM issued a government-wide rule or regulation concerning the termination of

12

probationary employees, the FLRA would be able to address whether that rule conflicts with the terms of existing collective-bargaining agreements.  In any event, this case does not involve a government-wide rule or regulation.  Rather, the case involves a challenge to individual agency terminations of probationary employees, and neither the fact that those terminations were widespread nor plaintiffs' allegation that agencies were acting at OPM's direction changes the nature of those claims.

Furthermore, the Supreme Court in *Elgin* rejected the argument that there is "an exception to CSRA exclusivity" for challenges to generally applicable rules.  567 U.S. at 12.  In that case, former federal employees brought suit challenging the constitutionality of the Military Selective Service Act, which bars anyone who has failed to register for the Selective Service from employment by any executive agency. *Id.* at 6–7.  The Supreme Court held that the CSRA precludes district-court jurisdiction over such claims and requires employees to bring such challenges to a government-wide statute before the MSPB, pursuant to the statutory scheme.  *Id.* at 10–13.  Just as the CSRA contains no exception for a claim seeking to reverse terminations on the ground that the generally applicable statute authorizing those terminations is unconstitutional, *id.* at 13, neither does it contain an exception for a claim seeking to reverse terminations on the ground that the alleged directive to effectuate those terminations was *ultra vires*.

Plaintiffs also contend (Resp. Br. 40–43) that there is no CSRA mechanism for a union or employee to bring a claim against OPM because any claim would need to

13

be brought against the employing agency. But it is irrelevant whether plaintiffs have an administrative route to litigate against each of the defendants in this case; it is enough that the union plaintiffs would have an opportunity for administrative and judicial review by bringing appropriate administrative action against the employing agencies. Even without OPM as a party, the union plaintiffs could obtain relief by raising an unfair-labor-practice claim with the FLRA. Indeed, in addition to suing their employing agencies, the plaintiffs in *Elgin* also sued the President and the United States—who would not have been parties to an MSPB proceeding—but that did not affect the Supreme Court's conclusion that a district-court action was barred. Plaintiffs cannot avoid the claims-channeling provisions of the CSRA by suing OPM in addition to the employing agencies, nor can they do so by labeling the employing agencies "relief defendants"—a made-up term, *see* Opening Br. 29 n.3.

Plaintiffs further err in contending (Resp. Br. 41–42) that Congress did not intend the CSRA to displace the cause of action created by the Administrative Procedure Act (APA). In fact, this Court has long held that "the general judicial review provisions of the APA never confer jurisdiction to review federal personnel actions." *Blue v. Widnall*, 162 F.3d 541, 545 (9th Cir. 1998). "[F]ederal courts have no power to review federal personnel decisions and procedures unless such review is expressly authorized by Congress in the CSRA or elsewhere." *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984). Plaintiffs point out (Resp. Br. 42) that Congress made OPM subject to the rulemaking provisions of the APA, but that argument proves too

14

much because the employing agencies are also subject to those provisions. Plaintiffs cannot avoid the claims-channeling provisions of the CSRA by asserting claims under the APA, whether those claims are directed at the employing agencies, OPM, or both.

**b.** Plaintiffs' further arguments (Resp. Br. 48–50) with regard to the organizational plaintiffs fare no better. As explained above, *Fausto* makes clear that employees to whom Congress denied statutory-review rights in the CSRA—including those in probationary status—cannot invoke a general jurisdictional statute as a basis to challenge an employment action. *Fausto*, 484 U.S. at 448–49. All the more so, Congress did not intend to grant federal courts jurisdiction to review employment decisions at the behest of third parties who use government services, and who are much less directly affected by the employment action than the employees themselves. Permitting such an exception to the CSRA's exclusive remedial regime would not only privilege third-party citizens and organizations over the employees themselves in seeking review of employment actions, it would also undermine the structure of the CSRA. In particular, it would create a possibility of inconsistent rulings across district courts where Congress meant to provide uniformity through the MSPB, and it would impose two layers of judicial review of employment actions where Congress meant to provide only one. *See id.* at 451.

Plaintiffs also err in suggesting (Resp. Br. 49–50) that the principles established in *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), do not apply in the context of the CSRA. The Court in *Fausto* relied heavily on *Block* in concluding that

15

Congress's intention is fairly discernible in the CSRA to preclude district-court jurisdiction over challenges to federal employment actions. Under the reasoning of *Block* and the holding of *Fausto*, the district court lacks jurisdiction over the organizational plaintiffs' claims.

**2.** Plaintiffs err in asserting that this case is controlled by the recent order denying a stay in *AFGE v. Trump*, in which a group of unions, non-profit organizations, and local governments challenged an Executive Order and a Memorandum directing agencies to submit plans for reductions-in-force. 139 F.4th 1020, 1028 (9th Cir. 2025). Stay orders issued at that "very preliminary stage of the proceedings" reflect different considerations from a merits panel's consideration of an appeal from a preliminary injunction and are therefore not binding on a merits panel in the same case. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660–662 (9th Cir. 2021). All the more so, the decision of a motions panel is not binding on a merits panel in a different case.

Furthermore, this Court's stay decision in *AFGE v. Trump* is plainly incorrect, as reflected by the Supreme Court granting a stay of the preliminary injunction in that case. *See Trump v. AFGE*, No. 24A1174, 2025 WL 1873449, at *1 (U.S. July 8, 2025). Among other things, the Court's conclusion that the district court had jurisdiction because the MSPB and FLRA cannot hear a challenge to the constitutional and statutory authority that forms the basis for an employment decision runs directly contrary to *Elgin*. *See AFGE v. Trump*, 139 F.4th at 1030–33.

16

This case is distinguishable from *AFGE v. Trump*, in any event. The Court in *AFGE v. Trump* thought that channeling claims to the MSPB or FLRA would be "meaningless" because "entire offices and functions" might be eliminated from federal agencies before the plaintiffs could obtain judicial review, 139 F.4th at 1032, a concern that plaintiffs do not raise in this case. The Court in *AFGE v. Trump* further opined that the plaintiffs' challenge to the Executive Order and Memorandum were outside the scope of the CSRA because they did not challenge particular employment decisions. *See id.* at 1031–32. Here, as discussed above, plaintiffs directly challenge the termination of probationary employees, and plaintiffs sought (and received) relief rescinding those terminations and directing the government to communicate with employees about the purported circumstances of the terminations. *See, e.g.*, 2-ER-312 (alleging that OPM exceeded its statutory authority by ordering the termination of probationary employees); 2-ER-318 (asking for injunctive relief "requiring OPM and Federal Agency Defendants to cease terminations of probationary employees pursuant to OPM's program and order; and requiring OPM and Federal Agency Defendants to rescind the prior unlawful terminations of probationary employees"). "A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Elgin*, 567 U.S. at 22. Because this suit directly challenges personnel actions, it is not "wholly collateral" to the CSRA's review provisions, and it falls squarely within the MSPB's or FLRA's

expertise, as those bodies are expert at assessing the Executive Branch's authority to take personnel actions.

## II. PLAINTIFFS' ADDITIONAL ARGUMENTS PROVIDE NO SUPPORT FOR THE COURT'S REINSTATEMENT INJUNCTION

**A.** The government's opening brief explained why the district court's extraordinary reinstatement injunction was badly out of step with plaintiffs' theory of illegality. Plaintiffs contend that OPM usurped agencies' authority by unlawfully directing the termination of probationary employees, but OPM clarified that "[a]gencies have ultimate decision-making authority over, and responsibility for," the type of personnel actions at issue here, 2-ER-376, and there was no basis for the district court to nonetheless proceed to enter a sweeping injunction directing terminated employees to be reinstated at specific agencies, Opening Br. 30–31.

As plaintiffs acknowledge, the district court itself has since declined a *second* request from plaintiffs to order reinstatement of probationary employees at additional agencies, recognizing that a reinstatement injunction would not be appropriate. 1-ER-24. Plaintiffs urge that is a basis for this Court to *dismiss* the government's appeal of the district court's reinstatement injunction or otherwise stay its hand, but that gets it exactly backwards—and only confirms that this Court should immediately vacate the district court's reinstatement injunction.

Moreover, as the government's opening brief established, the district court's reinstatement remedy also exceeded the scope of its equitable powers. *See* Opening

18

Br. 32–35.  Plaintiffs insist that in APA cases, courts have "broad powers to order mandatory affirmative relief, if such relief is necessary to accomplish complete justice."  Resp. Br. 60 (quoting *Northwest Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680–81 (9th Cir. 2007)).  But the government has already explained why that overbroad reading of the APA is incorrect.  Opening Br. 32–33.  Because reinstatement is inconsistent with traditional principles of equity, it is not "appropriate" relief under the APA, and plaintiffs cite no authority endorsing reinstatement as an available remedy under the APA.  Plaintiffs' reliance on *Bonneville Power Administration* is misplaced—there, the Court simply ordered a federal agency to continue certain operations with another agency; the Court never addressed the availability of reinstated employment as an equitable remedy.  477 F.3d at 680–81.

**B.**  Plaintiffs' arguments on the equities likewise provide no reason to maintain the district court's sweeping reinstatement injunction, particularly when the court has itself recognized that, under its own (flawed) reasoning, reinstatement is no longer necessary as a remedy.  The organizational plaintiffs' allegations in support of their irreparable harm rest on the same arguments as their claim to Article III standing, which fail for the reasons set forth above.  Resp. Br. 61–62.  Plaintiffs' bald assertion that the district court's injunction does not interfere with the government's management of its workforce (Resp. Br. 62) is plainly incorrect: the district court ordered agencies to reinstate employees they had previously let go.  And while plaintiffs second-guess the harms to the government and the public interest from the

19

court's order of reinstatement (Resp. Br. 62), plaintiffs do not dispute that the Supreme Court necessarily determined that that the district court's first injunction harms the federal government by staying that injunction pending appeal. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam); Opening Br. 37–38.

## III.   THESE APPEALS ARE NOT MOOT AND PLAINTIFFS PROVIDE NO SOUND REASON FOR THE COURT TO DECLINE TO EXERCISE ITS JURISDICTION TO REVIEW THE PRELIMINARY INJUNCTIONS

Finally, plaintiffs are wide of the mark in insisting that the government's appeals of the preliminary injunctions are moot or that this Court should otherwise stay its hand in vacating those injunctions.

Plaintiffs remarkably urge that the government's appeal of the district court's reinstatement injunction should be dismissed because that injunction has been stayed by the Supreme Court for "two months" and because the district court itself has recognized that reinstatement is not an "appropriate" remedy. Resp. Br. 4, 35–36. But as explained above, those are reasons for this Court to immediately vacate the injunction, not dismiss the government's appeal as moot. There is very much a "live controversy" where the district court's reinstatement order remains on the books and would be in effect but for the Supreme Court's stay.

Nor is the government's appeal of the court's second injunction moot. The court's second injunction required the government to provide certain notices to terminated employees describing the district court's view of the circumstances of their termination. 1-ER-27 (requiring a written statement, "directed to the employee

20

individually," stating that their termination "was made as part of a government-wide mass termination").  The government has disputed plaintiffs' characterization of the relevant facts while maintaining that the district court has no jurisdiction to adjudicate these federal personnel matters.  Vacating the district court's second injunction would leave agencies free, if they wished, to communicate to those employees that it disagrees with the prior written statement it had been required by the district court to provide.  This case therefore does not resemble the cases in which plaintiff relies in which actions could not "be undone."  *See, e.g.*, *Bogaert v. Land*, 543 F.3d 862, 864 (6th Cir. 2008) (finding controversy no longer live where the plaintiff had been granted preliminary injunction relating to a ballot initiative and initiative had already been certified and placed on the ballot for an election).

Plaintiffs' arguments about ongoing district court proceedings likewise provide no basis for this Court to decline to decide this case where this Court indisputably has appellate jurisdiction.  *See* 28 U.S.C. § 1292(a)(1).  Plaintiffs invoke "prudential" and "anticipatory" mootness, but the Court has never endorsed dismissing an appeal of a preliminary injunction simply because proceedings continue in district court—as is typically the case for such an appeal.

This Court has recognized the federal courts' "'virtually unflagging' obligation to 'hear and decide cases within its jurisdiction,'" and it has declined to dismiss an appeal as moot simply "because it could become so in the future."  *Meland v. Weber*, 2 F.4th 838, 849 n.7 (9th Cir. 2021) (quoting *Lexmark Int'l, Inc. v. Static Control*

21

*Components, Inc.*, 572 U.S. 118, 126 (2014)).  Indeed, the Court has declined to dismiss appeals on prudential mootness grounds that "might become moot" once the merits are decided, when "that has not yet happened," if there is a "'sufficient prospect'" the Court's "'decision will have an impact on the parties.'"  *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (quoting *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 884 (9th Cir. 1992)); *see also id.* (declining to dismiss an appeal on prudential-mootness grounds out of concern for an issue "evad[ing] appellate review").

        In none of the cases that plaintiffs cite (Resp. Br. 30–32) did the Court dismiss an appeal of a preliminary injunction because it was anticipating a subsequent order during ongoing district proceedings.  *Cf. Deutsche Bank Nat'l Tr. Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014) (affirming the *district court's* dismissal of certain claims as prudentially moot).  Such a rule would necessarily frustrate this Court's ability to conduct appellate review of preliminary injunctions.  *See Meland*, 2 F.4th at 849 n.7 (noting that other circuits have adopted the prudential-mootness doctrine, but that this Court had declined to do so).  Indeed, the Tenth Circuit in *Southern Utah Wilderness Alliance v. Smith* recognized an opposite rule from what plaintiffs advance here, explaining that the prudential-mootness doctrine might be applied to dismiss claims against the government in order to avoid interfering with government operations.  110 F.3d 724, 727–28 (10th Cir. 1997).

        Plaintiffs also offer no good reason for the Court to hold these appeals in abeyance.  Plaintiffs point to upcoming proceedings in district court, but the default

22

rule under these circumstances is for a district court's proceedings to continue apace after entering an injunction. *See* Fed. R. Civ. P. 62(c)(1). Under plaintiffs' logic, any appeal of an order granting a preliminary injunction should be held in abeyance if the district court might issue a subsequent rule while that appeal is pending in this Court. But this Court's rules require partially expediting those appeals to account for exactly that possibility. *See* 9th Cir. R. 3-3. This Court should instead promptly rule on the jurisdictional issues presented in these appeals, *see supra* pp. 3–18, to properly resolve how this case should proceed—such a ruling would itself "conserve" judicial resources. Resp. Br. 3.

## CONCLUSION

For the foregoing reasons and those in the government's opening and supplemental briefs, the preliminary injunctions should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
CASEN B. ROSS

*s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*
  *joshua.m.koppel@usdoj.gov*

July 2025

24

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Court's May 12, 2025, briefing order because it contains 5,642 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
Joshua M. Koppel